## R. E. ANDREWS v. THE STATE.

No. 9004.   Delivered May 6, 1925.

**1.—Manslaughter—Requested Charge—Covered by Main Charge—Properly Refused.**

Where on a trial for murder, appellant requested a charge embracing his theory of an accidental killing. while repelling an assault by deceased, such issue having been covered by the main charge, was properly refused, and especially so, as the requested charge does not correctly present the issues raised by the evidence, nor suggest any defects in the main charge, the refusal to correct which resulted in injury to the appellant.   See Britton v. State, 253 S. W., 520.

**2.—Same—Requested Charge—Reasonable Doubt.**

Where a requested charge submitting an issue is presented, which does not embrace the doctrine of reasonable doubt in connection with same, and which is contained in the main charge, substantially as in the requested charge, the fault in the main charge is held to have been waived by reason of the requested charge, which contains the same fault.   Following Regittano v. State, 96 Tex. Crim. Rep., 491.

**3.—Same—Requested Charge—Practice in Trial Court.**

It is a rule of practice, that when a defensive issue is submitted to the jury in the language selected by the accused in his requested charge, he is not in a position to, and will not be heard to complain, because it was not in a different form.

**4.—Same—Charge of Court—Reasonable Doubt—Defensive Issues.**

The rule requiring that the law of reasonable doubt be embraced in the charge submitting the affirmative defense, is not so imperative or inflexible as to demand a reversal in every case in which the rule is not observed. Following McCall v. State and other cases cited.

**5.—Same—Continued.**

The facts in the case, the conduct of the trial, and the charge of the Court as a whole should be looked to. Viewed in this light, unless the fault in the charge was calculated to injure the rights of appellant, it would not authorize a reversal by this court, under the language of the statute.   See Art. 743, C. C. P.

Appeal from the District Court of Archer County.   Tried below before the Honorable H. R. Wilson, Judge.

Appeal from a conviction of manslaughter, penalty two and one-half years in the state penitentiary.

The opinion states the case.

*Davenport, Cummings & Thornton,* for appellant.

*James V. Allred, Bullington, Boone & Humphrey;*

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—Upon an indictment for murder, appellant was convicted of manslaughter; punishment fixed at confinement in the penitentiary for a period of two and one-half years.

Appellant and deceased Melugin, up to a few months before the homicide, had been partners in the conduct of a filling station supplying gasoline. After the disssolution of the partnership, the deceased became associated with the witness Childers in the establishment of a competing filling station situated across the street from that of the appellant. On the occasion of the homicide, appellant went from his place of business to that of the deceased. Besides the deceased, there were present his associates in business, Childers and Roark. A conversation ensued, the subject of which was a steel barrel which was on a truck belonging to the deceased and which the appellant claimed to own. Of the tenor of the conversation, the State's witnesses were able to relate but little. It does appear from their testimony, however, that appellant, speaking to the deceased, claimed the barrel. A short time after the conversation began, Childers saw Melugin fall to the ground. From the witness we learn that the appellant had not changed his position but the point where the deceased fell was close to where the appellant was standing. After the deceased fell, appellant said: "I am getting tired of this monkey business," or words to that effect. He also said that he had come for his barrel several times; that he had been lied to and was getting tired of it.

The deceased received one wound, which was made with a pocket-knife having a blade two inches long, which penetrated the skull of the deceased the full length of the blade. There was evidence that in the manner used, the knife was a deadly weapon.

According to the appellant's testimony, he went after his barrel in a friendly attitude; that his knife was in his hand incident to using it in whittling; that he did not go to the deceased with the intent or expectation of an affray or a quarrel. As we understand the appellant's relation of the facts immediately preceding and attendant upon the homicide, upon his arrival he saw the deceased with a knife in his hand but did not see it at the time deceased made the attack. After a few words about the ownership of the barrel, the deceased called the appellant a liar and the appellant responded in kind and started to take the barrel off the truck of the deceased, but before he was able to move it, the deceased attacked him. Appellant, believing himself in danger of death or serious bodily injury, made movements with his arms, intending, as he expressed it, to "block the attack," but without the intent to strike the deceased with the knife which was in appellant's hand. From the testimony of the appellant we take the following:

"The idea struck me to go pull the barrel off the truck and roll it to the station, and I don't think I moved out of my tracks but just turned my head and he was right into me. * * * I saw he was mad when I turned to look at the truck. * * *

When I observed him coming toward me he was stooping over to some extent, and I just blocked off to get him back from me. I don't know just how it was done; it was all so quick. At that time I had my knife in my hand where I had been whittling. I did not intend to cut him with my knife. I didn't realize I had cut him until he came into me and I blocked down at him and he just quit all at once * * * and fell to the ground. * * *

I struck him because I thought I was in danger of losing my life or having inflicted serious bodily injury. It was an accident that I hit him with my knife. I just intended to block him off. I did not intend to hit him with my knife.''

In addition to the law of murder and manslaughter, the charge embraced the law of aggravated assault and self-defense.

The jury, at the request of the appellant, were told that 'if the deceased was advancing upon the appellant with a knife and the knife was a deadly weapon, the law presumed an intent upon the part of the deceased to do serious bodily injury to or to kill the appellant. They were also instructed that if the knife, in the manner used by the appellant, was not a deadly weapon, there could be no conviction of a felonious homicide unless the jury believe beyond a reasonable doubt that it was the intent of the appellant to take the life of the deceased.

Supplementing the charge on self-defense, which is embraced in the main charge, the jury were instructed that appellant had a right to go to the deceased's place of business for the purpose of peaceably recovering his property, and that if appellant's barrel was in the possession of the deceased and the appellant sought him for the purpose of peaceably reclaiming it and the deceased made upon the appellant an unlawful attack, or if it reasonably appeared to the appellant at the time that he was in danger of sustaining serious bodily injury at the hands of the deceased, he had a right to defend even to the extent of taking the life of the deceased; that in these matters were believed by the jury or if they had a reasonable doubt that while upon the premises the deceased advanced towards the appellant with an open knife in his hand and it reasonably appeared to the appellant that he was in danger of sustaining serious bodily injury, they should acquit the appellant.

The jury were also instructed that all special charges were to be given the same effect as those embraced in the main charge.

The following special charge was requested and refused.

"You are instructed that the defendant, R. E. Andrews, had the right on April 6th, 1924, to defend himself against any attack by the

deceased whether such attack produced fear of death or serious bodily injury or not, and had the right to use the necessary force to repel the attack, and you are further charged in this connection that if the defendant in repelling said attack, without any intent to kill or seriously injure the deceased, accidentally stabbed him causing his death, then in that event you will acquit him and say by your verdict not guilty.''

Appellant insists that the case should be reversed because of the refusal of this charge. We think not. In itself, the charge is incomplete in that it fails to inform the jury of the consequences of the use of unnecessary force and is calculated to leave the inference to the jury that the appellant might rightfully kill the deceased while repelling an attack which produces neither fear of death nor serious bodily injury without resorting to other means of averting the harm to his person. Moreover, the charge contains a repitition of that of which the jury had been informed, both in this main charge and in the special charge, namely, that if the homicide was the result of an accident, there should be an acquittal. For these reasons, there is no error in refusing to give the charge, and upon the record, as we find it, considering the verdict, we are impressed with the view that the requested charge suggests no defect in the main charge, the refusal to correct which resulted in injury to the appellant.

The charge in question is based upon that part of the appellant's testimony in which he said:

''When I saw him coming toward me and knew he had had the open knife in his hand a few moments before, all I know is I thought he was mad, and I felt like I was in danger *to some extent.*''

In Britton's case, 253 S. W. Rep. 520, this language was used:

''Exception was reversed to this charge upon the ground that the evidence raised the issue of aggravated assault. * * *

This court seems to have uniformly held that one charged with any grade of assault may rely for justification upon self-defense against an unlawful attack, even though such attack does not amount to an effort to inflict death or serious bodily injury.''

It seems obvious that the expressions in the case mentioned do not warrant the conclusion that an intentional homicide may be *justified* where it is intentionally inflicted in resisting an assault, the nature of which does not create in the mind of the accused an apprehension of either death or serious bodily injury, unless it appear that he had first used all other reasonable means, save retreat, to avert the injury. If the assault made by the deceased was not of a nature to create in the mind of the appellant, as viewed from his standpoint, an apprehension of death or serious bodily injury and did not create such apprehension, and in resisting such assault, appellant intentionally used a weapon which, in the manner of its use, was deadly, and killed the deceased without first

resorting to other reasonable and available means of protection save retreat, the jury might have been warranted in taking into account the assault made by the deceased to mitigate the offense or reduce its grade, but not to justify the homicide. See Art. 1107, P. C., also Branch's Ann. Tex. P. C., Sec. 1919.

The verdict in the present case reflects the conclusions of the jury that the homicide was intentional and that the weapon, considering the manner of its use, was deadly. This conclusion follows from the failure to acquit upon the ground of accident or to reduce the offense to the grade of aggravated assault, which might have been done under the instructions given. The grade of the offence was reduced to manslaughter. The weapon being deadly, the homicide intentional, and the jury having rejected the theory of self-defense no lower grade of offense than manslaughter could have been expected.

Against the conviction the point is made that the paragraph of the court's charge upon the theory of accident is incomplete because there is not embraced in the same paragraph an instruction upon the law of reasonable doubt. The views of the writer upon the subject are expressed in Regittano's case, 96 Texas Crim. Rep. 491. On motion for rehearing, the disposition of that case finally turned upon the manner in which the question was presented, the holding being that the right to complain of the fault in the charge was waived by the conduct of the case in the trial court, and in the present case, the State invokes a like principle.

In the 19th paragraph of the court's main charge, the language used is this:

"If you find and believe from the evidence that the deceased came to his death, as a result of an accident then you will find the defendant not guilty."

In the 20th paragraph immediately following the one quoted, the court gave the usual charge on the burden of proof, presumption of innocence and reasonable doubt.

Appellant prepared and presented to the court several special charges submitting the theory of accidental homicide. One of these was given; the others refused. In neither of them is there contained the law of reasonable doubt. The special charge given on the subject reads thus:

"* * * If you find and believe from the evidence that the defendant * * * without any intention on his part to kill the said S. H. Mclughin, in attempting to block an attack upon the said defendant, accidentally stabbed said deceased, you will acquit the defendant."

It is a rule of practice that when a defensive issue is submitted to the jury in the language selected by the accused, he is not in a position to complain because it was not in a different form.

The elaborate and exhaustive opinion of this court written by Judge Ramsey in Cornwell's case, 134 S. W. Rep. 221,. states and illustrates the rule and precedents upon which it rests. The rule requiring that the law of reasonable doubt be embraced in the paragraph of the charge submitting the affirmative defense is not so imperative or inflexible as to demand a reversal in every instance in which the rule is not observed. See McCall v. State, 14 Texas Crim. App.. 353; Edwards v. State, 58 Texas Crim. Rep. 342; Regittano v. State, supra. The facts in the case, the conduct of the trial and the charge of the court as a whole should be looked to. Viewed in this light, unless the fault in the charge was calculated to injure the rights of the appellant, it would not authorize this court to make such fault a reason for a reversal of the judgment This is in effect the language of the statute. See Art. 743, C. C. P.

. From the present record, it is made manifest that the issue of accidental homicide was submitted to the jury in the language chosen by the appellant's counsel, which was identical with that used by the court in its main charge, and we find ourselves unconvinced that the omission of which complaint is made was calculated to injure the rights of the appellant or to characterize the trial as other than a fair and impartial one.

The judgment is affirmed.

*Affirmed.*