JOE MALIN v. THE STATE.

No. 15624.   Delivered February 15, 1933.
Reported in 57 S. W. (2d) 167.

The opinion states the case.

*Lackey & Lackey,* of Stinnett, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense is murder; punishment, 35 years in the penitentiary.

The evidence for the state showed that the witness H. G. Bryant, as adjuster for a credit company which held the notes on a car appellant had purchased, came to Borger to arrange a settlement with the appellant for the payment of the notes, which were past due. Not being able to find appellant, the manager of a motor company at Borger recommended that he get one Roy Owens, the deceased, to help him find the appellant, and he (the witness) and the deceased finally located the appellant late in the afternoon. It was agreed between the appellant and the witness that they would drive to Pampa and see one Clossin in order to arrange the settlement. The appellant drove in his car, and the witness and deceased followed in their car thinking that he was going to Pampa. At Whittenburg the appellant turned his car around and in response to a question of deceased as to where he was going, told them that he was going to Pampa and drove off. The witness turned his car around and followed him. Appellant drove through a camp, down a steep hill, and stopped his car on the other side of a small stream. The witness drove his car down the hill and stopped his car a little ahead of appellant's car. When he stopped, the deceased called out to appellant and asked him why he had stopped his car, to which the appellant made no answer. As the witness Bryant got out of his car and walked to the rear, he saw a red flame shoot from the car driven by appellant and from appellant's hand, which was projected over the door of appellant's car, and at the same time he saw deceased slump forward, and he knew deceased was hit. After the shot he ran to the rear of the automobile and the appellant then shot at him, but he got behind a little pile of dirt and fell flat on the ground. The appellant then turned his car around and drove off.

The appellant admitted having the conversation with the witness Bryant on the streets of Borger, but there was a difference as to what was actually said between them. He testified that the witness demanded the car of him or that he pay the amount due, and stated to him that the man from whom the appellant had purchased the car had told him either to make an adjustment as to payment for the car or to take said car. The appellant further testified that at the time he went down the hill he was going to a milk man's house to meet two boys he was to take back to Sanford that night. That a car was following him, and when it stopped in front of him he heard some one in the car say, "We have got the s— of a b—".; that the man on the right-hand side of the car got out and came

running toward him, and he was frightened and grabbed the gun in his car and fired point blank out of the left of the car and then turned around and fired at the rear of the car. He further testified that he didn't know who the men were at the time and didn't recognize either of them. He thought they were going to beat him or kill him. He then backed his car and started back to town, and because of the frightened condition of his mind and he didn't know where he left his car, but recollected that it was somewhere on a highway. He didn't know at the time he left the scene of the shooting that he had killed any one, and the first time he knew that he had killed the deceased was when he read it in a paper at Tulia. He further testified that he did not hide out in the hills near where his car was found.

The appellant's car was found by the officers the next morning some distance from a road at the foot of some hills. The shooting occurred on the night of the 22d day of March, 1932, and on the Saturday thereafter the appellant, accompanied by a friend, surrendered himself.

The court in his charge to the jury submitted murder with and without malice and self-defense from actual as well as apparent danger. Several exceptions and objections were leveled at the court's charge, all of which were of a very general nature. There was a general exception to the court's charge because the evidence was not sufficient to authorize appellant's conviction of the offense of murder either with or without malice. There was also a general exception to the definition of "malice aforethought." Nowhere in the exception is the objectionable part of the charge on malice aforethought pointed out or in what manner the definition of malice aforethought was not sufficient. The court gave the ordinary definition of malice aforethought in his charge. Another general exception to the court's charge was that it did not properly instruct the jury on the law of self-defense. It is not pointed out in the objection as to what manner the charge was not sufficient on self-defense.

Bill of exception No. 1 complains of the introduction by the state of a purported confession of the defendant. The bill is qualified without objection to show that the district attorney stated that the state would offer a confession of the defendant. Upon the appellant objecting to said statement by the district attorney, the court instructed the jury to disregard the statement of the district attorney and not consider it for any purpose whatever in the case. The bill further shows that at that time nothing contained in the purported confession had been

introduced. Appellant's counsel asked that the jury be retired so that he could go over the alleged confession. After an examination by the appellant's counsel of said alleged confession, the court then asked the district attorney what he wanted to do with the alleged confession, to which the district attorney replied that he wanted to offer it, whereupon the court asked the appellant's counsel if he had any objection, to which the appellant's counsel stated that he did not. As qualified, no error is shown.

Bill of exception No. 2, as we understand it, claims that counsel for appellant was cut off from examining the appellant while testifying in his own behalf with reference to carrying a pistol in his car and whether or not he had a pistol on or about his person. The court qualified said bill to some length without objection on the part of the appellant. The qualification shows that the court sustained the state's objection to the leading of the appellant by his counsel. The bill further shows that both the state and the appellant's counsel examined the witness at some length and passed him back and forth about eight times. The court retired the jury and stated to appellant's counsel that he could examine the witness out of the presence of the jury and if the testimony was admissible that the court would admit it, whereupon, in the absence of the jury, appellant's counsel asked the appellant two questions in regard to the pistol and his possession thereof, and the court then stated to appellant's counsel that the two questions asked in proper form would be admitted. The jury was returned to the box, and the appellant's counsel asked the appellant one question, which was answered by the appellant without objection, at which time the appellant's counsel stated, "That is all," and made no further effort to ask such question or elicit such testimony in the presence of the jury. Under said qualifications, no error is shown.

Bill of exception No. 3 complains of the refusal of the trial court to give a special charge to the jury, which was as follows: "You are instructed as part of the law in this case that if you find and believe from the evidence beyond a reasonable doubt that the defendant, Joe Malin, in defense of his own life, or if the said defendant at the time he killed the said Owens, if he did kill him, believed that serious bodily injury was about to be inflicted upon him, the said defendant, or he was defending or believing that he was subject to a lesser attack, or that a lesser attack than those described above was about to be committed upon him, that it would be your duty to acquit the de-

fendant and so say by your verdict."

The only written objection to the charge upon that issue was as follows: "The defendant further objects and excepts to said charge of the court for the reason that the court does not properly instruct the jury as to the law of self-defense." The exception itself was not sufficient to call the court's attention to any error in the court's charge on self-defense, and it will be observed that the charge requested is an incomplete and incorrect statement of the law under article ʻ1224, Penal Code. See, also, Andrews v. State, 101 Texas Crim. Rep., 261, 275 S. W., 1024. The court gave a full charge both as to real and apparent danger and no further exceptions save the one pointed out were reserved to said charge. Any complaint to the main charge of the court, either of commission or omission, must be specially pointed out in the objection and the matter complained of clearly indicated to the court. Even though a sufficient exception had been taken to the court's charge and a proper special charge prepared, we are not able to say from the evidence that the trial court would have been called upon to submit it. The charge in question could only be based upon that part of the appellant's testimony in which he said, "I did not recognize either of them there at that time. I didn't know what these men were trying to do. When the man said, 'We have got the s— of a b—,' I thought they were going to beat me up or kill me or something." Under the circumstances, we are not able to say that any error was committed in the respect complained of which would justify a reversal.

Finding no error in the record which would justify a reversal, the judgment is ordered affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.