### ROSCOE JONES V. THE STATE.

No. 15958.   Delivered June 21, 1933.
Rehearing Denied November 15, 1933.
Second Rehearing Denied March 7, 1934.
Reported in 69 S. W. (2d) 65.

The opinion states the case.

*John B. McNamara,* of Waco, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for five years.

The opinion on a former appeal is reported in 39 S. W., Second Series, at page 76.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Loyd McCollum by shooting him with a pistol.

Appellant was employed as an automobile mechanic in a garage operated by his father. He had sold an automobile to Jesse Cline and Clarence Cline on the deferred payment plan. At the request of the Cline boys appellant had come to the home of Ab. Cline, their uncle, where Jesse Cline and Clarence Cline resided, for the purpose of collecting a deferred payment on the car. Upon his arrival, appellant was invited into the house, where he drank some home brew with the Cline boys. While in the house it was agreed between those present that Jesse Cline and Clarence Cline would deliver the automobile to appellant because they were unable to meet their payments. All of

the discussion between the Cline boys and appellant about the car was good natured and amicable. The parties remained in the house from about 11:30 a. m., until 3 o'clock in the afternoon. It had been raining for several hours. After the rain stopped, appellant, Ab. Cline, Jesse Cline and Clarence Cline left the house. Shortly after they had gone into the yard Ab. Cline remonstrated with appellant and one of the Cline boys for urinating near the house. Appellant and the Cline boy immediately desisted and went to a nearby outhouse. The automobile which the Cline boys were delivering to appellant had to be pushed from the yard. Appellant and the Clines undertook to push the car into the road in order that appellant might tie it behind his truck. While the parties were engaged in pushing the car from the yard into the road, it became stuck in a small ditch. Jesse Cline then went to the home of Loyd McCollum, deceased, which was about 200 yards away. A few minutes after Jesse Cline went to McCollum's house, Ab. Cline stated that he would go to the home of deceased and get a chain to pull the car out of the ditch. Deceased and Mr. Chamberlain returned with Ab. Cline and Jesse Cline.

The community in which Cline lived was known as Bull Hide. As soon as deceased approached appellant, he said to appellant, in substance, that it looked like he had come down there to impose on the Cline boys and run Bull Hide. Appellant replied that he was not trying to run over anybody, but trying to push his automobile out of the ditch, and asked deceased if he would help push the car out. Deceased replied: "No, the law will have to push the car out of the ditch. It is the law's business to take the car." Appellant said: "Well, if you feel that way about it, you had better go back to your home." Ab. Cline then asked deceased to assist in trying to get the car out of the ditch, and deceased replied: "Well, I will help you (meaning Ab. Cline) but I will not help him (meaning appellant)." After an unsuccessful effort to get the car out of the ditch, deceased walked to the automobile and began to clean his shoes off on the running board. Some of the witnesses said that deceased was using a stick; some said he was using his knife, and one witness said that he was scaping his foot on the running board of the car. While deceased was thus engaged, according to appellant's testimony, Ab. Cline told appellant to get his car out of his yard, and undertook to pick up a piece of iron pipe three or four feet long, lying on the ground near the car. Appellant told him not to pick the piece of pipe up. Cline did not pick the pipe up, but said to deceased as he (Cline) approached appellant: "Mack, Must I hit him?" Deceased

replied: "I believe I would." In the meantime one of the Cline boys walked behind appellant, and appellant said to him: "Now, don't you all try to gang on me." State's witnesses testified that Ab. Cline did not pick up the piece of iron pipe. According to their version, just as deceased told Cline that he believed he would hit appellant if he were Cline, appellant called deceased a dirty s— of a b—. Appellant testified that he did not use the epithet, but that it was used by deceased toward him. Deceased told appellant that nobody was afraid of him (appellant); that he might have a gun but he did not have the courage to use it. Deceased advanced rapidly toward appellant, with his hands clenched. Appellant testified that he thought deceased had a knife in his right hand. State's witnesses testified that deceased's hands were clenched but that he had no knife. As deceased advanced on appellant, appellant pulled his pistol and fired when deceased was within three or four steps of him. State's witnesses testified that the pistol was elevated and the shot passed over deceased's shoulder. Appellant testified that he fired for the purpose of trying to stop the advance of deceased, and that he had no intention of hitting him. . Deceased continued to advance upon appellant. When appellant fired the second shot deceased was close to him. This shot took effect. Deceased turned and walked away, and appellant did not attempt to fire another shot. After walking some 15 or 20 steps, deceased fell to the ground, and died in a short time. Deceased's wife came running to the scene of the shooting and requested that someone get a doctor. Appellant testified that he told her he would get a doctor as soon as he could get his car cranked. State's witnesses denied that appellant made this statement. There had been no previous trouble of any character between appellant and deceased; neither had there been any trouble between appellant and the Clines.

It is observed that the verdict of the jury expressly found appellant guilty of murder without malice. Appellant contends that the evidence is insufficient to support the conviction. Appellant admitted that when he fired the second shot he intended to hit deceased. He declared, however, that he fired the first shot over deceased's shoulder in an effort to stop him. He said: "I shot Mr. McCollum because I thought he was going to come on to me with a knife in his hand; going to hurt me or maybe kill me. I saw what I took to be a knife in his hand. He was standing over at the car cleaning his feet off with something I took to be a knife. The first time I shot I shot over him to see if it would stop him. I could have hit him the first time I shot. I was in about four steps of him. * * * I intended to shoot him

the second time. He was mighty near in reaching distance when I shot. I might have stepped back one step. I don't remember whether I did or not." As heretofore pointed out, the state's testimony was to the effect that deceased had no knife in his hand, the state's version being that deceased approached appellant with clenched fists. The testimony of the state was to the further effect that at no time did deceased strike appellant with his fist or any character of weapon. Under the circumstances, we think the jury were warranted in concluding that, viewed from the standpoint of appellant at the time, appellant entertained no reasonable expectation or fear of death or serious bodily injury when he fired the fatal shot. The jury might have reached the conclusion that appellant believed that deceased was going to strike him with his fist, but this fact alone would not have warranted an acquittal of murder. See Bryant v. State, 100 S. W., 371. We deem the evidence sufficient.

The court predicated appellant's right of self-defense upon an apprehension or fear of death or serious bodily injury. Appellant objected to the charge because of its failure to embody an instruction covering his right to defend against any unlawful and violent attack. In the state of the record, the refusal to predicate a charge upon article 1224, P. C., relating to the right to defend against any unlawful and violent attack, would not call for a reversal. It appears from appellant's testimony that appellant based his right of self-defense on the necessity of protecting himself against an attack which threatened his life or threatened him with serious bodily injury. If the jury had believed that appellant did not apprehend death or serious bodily injury at the hands of deceased, but nevertheless had reached the conclusion that deceased was preparing to attack appellant with his fists, under the circumstances reflected by the record, the charge sought would have been of no benefit to appellant. Deceased had not hit appellant with his fists. At the time he was shot, he was not close enough to appellant to have hit him. In a homicide case, in order to warrant a charge under the provisions of article 1224, P. C., the attack must be of a violent character. Bryant v. State, 100 S. W., 371. In the present case there was no evidence raising the issue of a violent attack. We quote from Bryant v. State, supra, as follows:

"Article 667, P. C. (now Article 1224) authorizes self-defense as against a nonfelonious assault, and that is where the attack is of a violent character, and in such case self-defense is only allowable while the person killed is in the very act of making such unlawful and violent attack. As we under-

stand by this, it does not authorize a killing when the party is about to attack, or is doing some act preparatory to the attack, but he must be then making such unlawful and violent attack."

Notwithstanding the attack may be violent, before the accused is warranted in killing his assailant, he must first resort to all other reasonable and available means of protection, save retreat. We quote the language of Judge Morrow in Andrews v. State, 275 S. W., 1024, as follows: "It seems obvious that the expressions in the case mentioned (Britton v. State, 95 Texas Crim. Rep., 211) do not warrant the conclusion that an intentional homicide may be justified where it is intentionally inflicted in resisting an assault, the nature of which does not create in the mind of the accused an apprehension of either death or serious bodily injury, unless it appears that he had first used all other reasonable means, save retreat, to avert the injury. If the assault made by the deceased was not of a nature to create in the mind of the appellant, as viewed from his standpoint, an apprehension of death or serious bodily injury and did not create such apprehension, and in resisting such assault, appellant intentionally used a weapon which, in the manner of its use, was deadly, and killed the deceased without first resorting to other reasonable and available means of protection save retreat, the jury might have been warranted in taking into account the assault made by the deceased to mitigate the offense or reduce its grade, but not to justify the homicide."

We have carefully examined the bills of exception relating to argument on the part of counsel for the state. We deem it necessary to consider but one of these bills. It was in evidence, without objection, that appellant, before going to the scene of the difficulty, had bought a bottle of beer in Waco. Appellant testified that he did not know where he bought the beer; that he bought it in Waco; that he did not know from whom he bought the beer; that he had never before seen the man from whom he bought the beer, and had not seen him since. In his argument, counsel for the state referred to appellant's testimony about buying the beer in Waco and ridiculed appellant's testimony touching the fact that he did not remember where he bought the beer, and from whom he bought it. In connection with this argument, counsel stated that if appellant would tell a story in order to protect a bootlegger it was reasonable to conclude that he would give fabricated testimony to protect his own life, when he was upon trial for murder. The court overruled appellant's objection to the argument. We are unable to reach the conclusion that the matter presents error. It is not shown in the bill of exception that the testimony upon which

the argument was based was not material on the issue of guilt. The inferences counsel drew were from facts testified to by appellant himself, which went into the record without objection.

A careful examination of all of appellant's contentions leads us to the conclusion that error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Appellant, through his counsel, in a motion for rehearing showing much research and presented in a forceful oral argument, renews his contention that the trial court was in error in not sustaining the appellant's position touching the charge of the court on the law of self-defense. The trial court, in instructing the jury, protected the right of the appellant to an acquittal on the ground of self-fense upon the finding of the jury from the evidence that he killed the deceased under an apprehension or fear of death or serious bodily injury. As viewed by the trial court and by this court, the facts in evidence fail to present a showing that at the time the fatal shot was fired the deceased was making an unlawful and violent attack upon the appellant; and in the absence of such showing, the instruction given to the jury was proper and adequate to present the appellant's defensive theory. In the motion for rehearing we have been referred to many cases, among them the following:

The case of McLendon v. State, 66 S. W., 553, has no more than confirmed the conceded principle that circumstances might arise in which one would be justified in taking the life of his adversary who, viewed from the standpoint of the appellant, was about to inflict upon him death or serious bodily injury.

Andrews v. State, 275 S. W., 1024, is not regarded as in any sense supporting the appellant's contention. In the course of the opinion, the following remarks are made with reference to the case of Britton v. State, 95 Texas Crim. Rep., 211: "It seems obvious that the expressions in the case mentioned do not warrant the conclusion that an intentional homicide may be justified where it is intentionally inflicted in resisting an assault, the nature of which does not create in the mind of the accused an apprehension of either death or serious bodily injury, unless it appear that he had first used all other reasonable means, save retreat, to avert the injury. If the assault made

by the deceased was not of a nature to create in the mind of the appellant, as viewed from his standpoint, an apprehension of death or serious bodily injury and did not create such apprehension, and in resisting such assault, appellant intentionally used a weapon which, in the manner of its use, was deadly, and killed the deceased without first resorting to other reasonable and available means of protection save retreat, the jury might have been warranted in taking into account the assault made by the deceased to mitigate the offense or reduce its grade, but not to justify the homicide. See article 1107, P. C., also Branch's Ann. Tex. P. C., sec. 1919."

In the Hathcock case, 281 S. W., 859, cited by the appellant, the facts are not sufficiently comprehensive for us to fully understand the state of the evidence upon which the court passed. However, in the opinion reference is made to the case of Holcomb v. State, 98 Texas Crim. Rep., 456, in which the facts are set out and in which the conclusion reached is deemed in accord with that reflected by the original opinion in the present appeal.

From the case of Shutz v. State, 96 Texas Crim. Rep., 287, the concluding paragraph is quoted as follows: "With uniformity, the decisions of this court affirm that the right of self-defense applies to any unlawful attack. See Britton v. State, 95 Texas Crim. Rep., 209, 253 S. W., 519, and cases collated. The nature of the assault against which the defense is made and the means used, as well as the character of the resistance made, are matters to be considered by the jury in determining the grade of the offense, if any, and the extent of the punishment."

In the present instance, the appellant testified as follows: "I shot Mr. McCollum because I thought he was going to come on to me with a knife in his hand; going to hurt me or maybe kill me. I saw what I took to be a knife in his hand. He was standing over at the car cleaning his feet off with something I took to be a knife. The first time I shot, I shot over him to see if it would stop him. I could have hit him the first time I shot. I was in about four steps of him. I did not shoot any more after he turned and started to leave."

On cross-examination appellant testified: "I intended to shoot him the second time. He was mighty near in reaching distance when I shot. I might have stepped back one step. I don't remember whether I did or not."

One may take the life of his adversary in resisting an assault threatening death or serious bodily injury. See article 1222, P. C., 1925. Homicide is likewise justifiable in resisting

a violent and unlawful attack upon a person, although death or serious bodily injury is not threatened, provided before taking life under such circumstances all other means must be resorted to for the prevention of the injury and the killing must take place while the person killed is in the very act of making the unlawful and violent attack. See article 1224, P. C. One is not bound to retreat to avoid the necessity of killing his assailant. Article 1225, P. C. But the attack upon the person of an individual in order to justify homicide must be such as produces a reasonable expectation or fear of death or some serious bodily injury. Article 1226, P. C.

In support of the original opinion, reference has been made to the following precedents: Forest v. State, 300 S. W., 51; Andrews v. State, 275 S. W., 1024; Davis v. State, 117 Texas Crim. Rep., 377; Britton v. State, 95 Texas Crim. Rep., 209; Bush v. State, 40 Texas Crim. Rep., 539.

The various cases have been examined but a further discussion of them is not deemed necessary. In this, as in all other cases, the evidence is of primary importance in exhibiting the issues of fact and law controlling the appeal. From the evidence no theory of defense other than that upon which the jury was instructed is perceived. Admittedly, the deceased was shot when he was not near enough to the appellant to touch him. No weapon was seen in the hands of the deceased at the time. No declaration or threat to use a weapon is imputed to the deceased by the testimony. The appellant was armed with a deadly firearm which was also usable as a bludgeon. From his testimony the appellant apparently concluded that from the acts of the deceased prior to the time he approached the appellant and from his conduct while approaching him, the appellant regarded himself as subject to an attack threatening his death or serious bodily harm to his person. In an appropriate manner the court instructed the jury that if the deceased was making such attack, or if, viewed from his standpoint, appellant believed that he was in danger of life or serious bodily harm at the hands of the deceased, it was the right of the appellant to resist the attack even to the taking of the life of the deceased. The verdict of the jury implies that they did not believe that the appellant was justified under the circumstances to regard himself in danger of life or serious bodily harm at the hands of the deceased. The appellant contends that his rights were unduly restricted by the failure of the court to instruct the jury that the appellant had a right to use as much force as was necessary, viewed from his standpoint at the very time of the shooting, to repel any assault made by the deceased.

In the motion for rehearing, the view of the appellant is stated as follows: "It was not the contention of Appellant in the trial court, nor is it his proposition here, that he had a right to kill the deceased in the defense of himself against a simple assault and battery, but he does assert that he had a right to take the life of the deceased in defending himself against such an attack when all other means, save retreat, had been resorted to by him for the prevention of the assault and injury."

The proposition of appellant's counsel embraces all the elements of articles 1224 and 1226, supra, to which reference has been made above, but the evidence or circumstances which would make the proposition tenable upon this appeal, as we have attempted to demonstrate in the original opinion, are entirely lacking.

After the most careful examination of the record of which we are capable, we are impressed with the view that the motion for rehearing should be overruled, which is accordingly ordered.

*Overruled.*

## ON SECOND MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant asks leave to file, and requests us to consider, a second motion for rehearing. Regarding such second motions, we said in Hickman v. State, 93 Texas Crim. Rep., 407, 247 S. W., 518:

"Second motions for rehearing will not be considered by this court, nor leave granted to file same, unless there be a sufficient showing in such application of the fact that in its original opinion, or opinion upon the motion for rehearing, the court has omitted to consider some matter, which, from the statement thereof in such application, is made to appear to this court so vital to the proper disposition of the case as to lead us to conclude that we erred in failing to consider same, or else such application must present such facts, arguments, or citations in reference to some matter decided in the original opinion or that upon rehearing, as will lead this court from an examination of the application to conclude that our decision in such regard was so far wrong as that its correction would entitle the appellant to a second rehearing."

This rule has been reiterated in Calley v. State, 103 Texas Crim. Rep., 53, 279 S. W., 848; Webb v. State, 9 S. W. (2d) 335; Cotter v. State, 22 S. W. (2d) 1071.

Appellant does not claim that we omitted the consideration of any matter regarded as material by him, but thinks we reached an erroneous conclusion upon the question which was

discussed at length both in our original opinion and in the opinion on rehearing. Counsel for appellant urges his position most courteously, as he always does, but strongly and persuasively. We think the difference between him and the court does not arise from any divergent views regarding the law but from a different angle at which the evidence is seen.

In the argument in support of the second motion for rehearing, we are urged to regard the case in the light in which the conduct of deceased's companions appeared to appellant in connection with the acts and words of the deceased. The trial judge seems to have submitted that issue properly in his instructions to the jury.

Believing proper disposition to have been made of the case, the second motion for rehearing is denied.

*Denied.*