H. Y. P. BROUSSARD V. THE STATE.

No. 20141.  Delivered May 17, 1939.
Rehearing Denied June 14, 1939.

The opinion states the case.

*K. W. Stephenson,* of Orange, and *O..I. Baker,* and *Quentin Keith,* both of Port Arthur, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is murder; the punishment, confinement in the penitentiary for fifty years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Etienne Richard by shooting him with a gun.

The homicide occurred on the 5th day of February, 1937, on a tract of land appellant had leased for trapping purposes. Deceased and Albert Theriot had entered into an agreement with appellant whereby they were permitted to trap on said land. According to the testimony of the State, appellant, deceased and Theriot had been having trouble, which eventuated in the assassination of the deceased by the appellant. Shortly after the homicide, officers went to the place where deceased had been killed and examined his body. They found no weapons of any character. Touching the nature and extent of the wounds on the body of deceased, a physician testified as follows:

"There were numerous gunshot wounds on the body of Etienne Richard. There was a shot or a charge of buckshot in the upper part of the right arm in front, in front of the right shoulder. * * * The right collarbone was broken. There was the holes of twelve buckshot wounds in the back part of the thighs and the buttocks. * * * There was several buckshot wounds scattered in the right side of the right thigh and entering on the left thigh, and there was another part of a charge of buckshot that went into the right leg between the ankle and the knee, breaking the leg. * * * I don't think that any of those wounds that I have just described could have produced death, of course, I mean quick death. There were other wounds upon that body. There were two other wounds, apparently a thirty-eight caliber pistol; one going in about three-fourths of an inch below and three-fourths of an inch in front of his right ear. * * * He had another wound in front about an inch and above the right ear. The wound just below the right ear and in front, the skin was badly powder-burned; the other wound was in the margin of his hair. His hair was a little thick and I couldn't be sure about the powder-burning on his hair. I think either one of those pistol wounds would have produced death; instant unconsciousness and death in a short time."

Appellant testified, in part, as follows:

"On the morning of February 5th, it was something in the neighborhood of eight-thirty when I first saw Etienne Richard, maybe a little later; I didn't have no watch. Just before I saw Mr. Richard I had been on the north part of my territory and I was coming down south along the canal. I was traveling in a pero or boat. I was dressed in this jacket, just a zipper work jumper and a shirt and had on a pair of hip boots. I was on top of the levee when I first saw Mr. Richard. * * * When I got my gun from my boat I discovered Richard in the neighborhood of 33 yards from the bank and when both

of us faced at the same time he says: 'You here again? Did we told you not to come? If you come back we would kill you?' and he had something in his hand about that long, about eight or ten inches long. After Mr. Richard spoke to me as I have just testified he kept coming toward me walking fast. Mr. Richard looked to me like he was in a bad humor the way he was coming and the way he spoke to me. Mr. Richard was coming toward me walking fast, and I told him, 'Don't come any closer.' Then he answer: 'I will make you swallow that gun'; then I don't answer any more; I grabbed the Winchester pump and aimed right at him. I shot him. He shook his fist and walked toward me fast and said: 'Albert will get you.' I shot him again. He said, 'Albert will get you.' I shot him again and he fell. He fell on his elbow and the gun, the sound of the gun sounded empty to me. I have been using a Winchester pump all time practically and I know when it is loaded. I began to pump to see if there was any more in the magazine. I thought about what the Federal law is, it is against over three shells. I looked into the gun to see if there was any shells left and there was none. I took a shell from my jacket and put it directly into the barrel. He was still coming when I put the magazine back in place; I aimed at him and he turned to his left and dove with his hand pointed that way behind some grass taller than average grass and when he came behind the grass I shot the fourth load. When Mr. Richard started coming toward me with that instrument in his hand I thought he was going to kill me; I was satisfied he was going to kill me as he suggested he was. After I had shot the fourth shot directly into the grass when Mr. Richard dove into the grass I put my gun on the levee in the same sandy spot that was dry. I walked toward him. I figured he was dead, but as I walked toward him he got up on his all-fours and turned around, and when he turned around that way I thought he was going to kill me. I pulled my gun without aiming, he was so close coming toward me, and me backing up, and I pulled the trigger and as he wheeled around I pulled the trigger again; this side of the face and again on this side, I never paid any attention, it looked like both on the same side of the face."

The court instructed the jury, in substance, that if they believed from the evidence that appellant was justified in firing the shot that killed the deceased, then the subsequent shots fired by appellant, if any, did not impair his right of self-defense, and he had the right to continue to fire so long as danger, real or apparent, considered from his standpoint, continued to exist. Appellant leveled several objections at this

charge, only one of which we deem it necessary to consider. We quote the exception as follows: "Said charge is objectionable in that it provides that if the defendant was justified in firing the shot that killed the deceased, then, under certain circumstances, the defendant would have the right to continue shooting; that this is a charge upon the weight of the evidence and that there is no evidence before the jury as to which shot did actually kill the deceased; and if the jury should conclude that the first shot didn't kill the deceased, then he would not be justified, under the court's charge, for further shooting."

The court was not undertaking to say to the jury that any particular shot killed the deceased, nor was he undertaking to indicate that any shots were fired after the fatal shot was fired; but, realizing . that it was for the jury to determine which shot was the fatal shot, he instructed them that if the appellant was justified in firing that shot, then if he did fire any subsequent shots, such action did not impair his right of self-defense in firing the shot that killed deceased. As we construe the charge, it simply means that if appellant was justified · in firing the shot that killed the deceased—whether it was the first, second, third, fourth, fifth or sixth shot—then the subsequent shots, if any, fired by appellant would not impair his right of self-defense. If it was the first shot that killed deceased then the five subsequent shots would not impair appellant's right of self-defense; likewise, if the second shot killed deceased, the four subsequent shots would not impair the appellant's right of self-defense, and so on through all the shots that were fired. It is observed that the charge accorded appellant the right to continue to shoot so long as it reasonably appeared to him that he was in danger, considered from his standpoint. It follows from what we have said that we are of opinion that the failure of the court to respond to appellant's exceptions would not warrant a reversal of the judgment.

In submitting the issue of self-defense, the court instructed the jury as follows: "And in this case if you believe from the evidence that the defendant, H. Y. P. Broussard, at the time and place alleged in the indictment, did kill Etienne Richard, by shooting him with a gun, *but that if from the conduct, or acts, or words of the deceased, viewed from the defendant's standpoint alone, in the light of all the facts and circumstances within his knowledge,* it appeared that the deceased, Etienne Richard, was attacking or about to attack the defendant, H. Y. P. Broussard, and thereby kill him or inflict serious bodily injury upon him, and that acting upon such

danger or appearance of danger, as viewed from the defendant's standpoint alone, he, the said H. Y. P. Broussard, shot and killed the said Etienne Richard, in order to protect himself from death or serious bodily injury, then, in such case, such shooting would be justifiable, and if you so find the facts to be, or if you have a reasonable doubt thereof, you will find the defendant not guilty." (Italics ours.)

Appellant excepted to the foregoing charge on the ground that the court had failed to incorporate therein an instruction to the effect that the jury should take into consideration, not only the acts of the deceased, but words spoken by him, if any. We think the italicized language answers appellant's contention. The jury were not only told that they might consider the acts, but were also advised that the words of the deceased might be considered. It is true that there was no instruction that the words of the deceased, coupled with his acts, might be considered but the court did tell the jury, as shown in the charge, that the acts or words of the deceased should be viewed in the light of all the facts and circumstances within the knowledge of the appellant. The applicable rule is stated in 22 Texas Jur., 1046, as follows: "When the evidence of the defendant indicates that the words of the deceased may have given color to his acts or have helped produce a fear of death or serious bodily injury in the mind of the defendant, the charge should permit the jury to consider both words and acts. But the mere failure to refer in terms to words of the deceased is not ground for reversal, so long as they are not excluded and the language of the charge is broad enough to authorize the jury to consider them."

In Rhodes v. State, 7 S. W. (2d) 569, we held that the charge on self-defense should refer to both the acts and words of the deceased where words as well as acts may have produced in the mind of the accused fear of death or serious bodily injury at the hands of the deceased. In that case there was an omission to refer to the words of the deceased. In reaching the conclusion that the failure to so charge was not reversible error, the court used language as follows: "In the instant case there was no sort of exclusion in the charge given; on the contrary, as appears from the quotation of that part of the charge in our former opinion, the jury were bidden by the charge to decide from the acts alone of the deceased, or from same in connection with all or any of the relevant facts before them, whether there was created in the mind of appellant a reasonable expectation or fear of death

or serious bodily injury at the hands of deceased. While not in the exact words of Art. 1222, supra, (P. C.) this affirmatively told the jury to consider all the evidence before them and excluded nothing in determining the issue ,of self-defense." See also Stroud v. State, 46 S. W. (2d) 689. We are constrained to hold that the failure to respond to appellant's exception should not work a reversal of the judgment.

Appellant also objected to the charge on threats on the ground that it failed to advise the jury that they could take into consideration not only the acts of the deceased but the words spoken by him at the time of the homicide. Subdivision 1 of Art. 1222, P. C., which relates to self-defense, reads: "It must reasonably appear by the *acts or by words coupled with the acts* of the person killed that it was the purpose and intent ɔf such person to commit one of the offenses above named." (Italics ours.) Article 1258, P. C., relating to threats, reads: "Where a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce evidence of the threats made, but the same shall not be regarded as affording a justification for the killing unless it be shown that at the time of the homicide the person killed by some *act* then done manifested an intention to execute the threat so made. * * *" (Italics ours.) The statute last quoted makes no reference to the words the deceased might have uttered at the time of the homicide. Hence the exception to the charge was not well taken.

It has been observed that deceased was unarmed when officers went to the scene of the homicide and examined his body. Appellant cites no case, and we know of none, holding that it is proper for the charge to single out evidence to the effect that the deceased was not armed at the time he was killed, and instruct the jury as to the weight to be given such fact in determining whether, under the law of self-defense, the accused was justified in slaying the deceased. We are constrained to uphold the action of the trial court in the refusal to comply with appellant's request that the subject be charged on.

Appellant sought to have the court submit an instruction to the jury under the provisions of Article 1224, P. C., relative to the right of one to defend against a non-felonious assault. The issue was not raised. According to appellant's testimony when he killed deceased he believed deceased was preparing to shoot him with a pistol. In short, he testified that he believed he was in danger of losing his life or suffering serious

body injury at the hands of deceased. Deceased had not made an unlawful and violent attack on appellant, although it might have been his purpose to make a non-felonious assault upon the appellant. We quote from Bryant v. State, 100 S. W. 371, as follows: "Art. 677 (now Art. 1224) authorizes self-defense as against a non-felonious assault, and that is where the attack is of a violent character, and in such case self-defense is only allowable where the person killed is in the very act of making such unlawful and violent attack. As we understand by this, it does not authorize a killing when the party is about to attack, or is doing some act preparatory to the attack, but he must be then making such unlawful and violent attack."

See Jones v. State, 69 S. W. (2d) 65.

We are constrained to the view that the record fails to reflect reversible error.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again complains in his motion because of the fact that we failed in our original opinion to sustain his bill of exceptions No. 1, wherein he requested the trial court to embody in its charge on threats the privilege of allowing appellant to take into consideration the words spoken by the deceased at the actual time of the shooting, in conjunction with the law relative to threats upon the part of the deceased. It is to be noted that in such paragraph of said charge the trial court did instruct the jury that in this connection they might take into consideration the other facts and circumstances of the case. It is also worthy of note that the trial court, in submitting appellant's plea of self-defense, gave to the appellant the benefit of the conduct, or the acts, or words of the deceased at the time of the killing, as viewed from appellant's standpoint alone, as a predicate upon which to base an acquittal, and it seems to us that was as far as it was necessary for the charge to go. The court's statement that the jury, when considering the question of threats, may take

into consideration the other facts and circumstances, should have furnished a wide enough range to encompass the words of the deceased not only at a prior time, but also those words and acts as well that were testified to. by appellant at the scene of the killing.

Appellant's second ground of complaint of our original opinion is because the trial court failed to charge the jury that if the appellant believed that the deceased was reaching for a weapon, that the fact that deceased possessed no weapon at such time would not affect his right of self-defense. It is observed that the court gave a full and fair charge on self-defense, coupled with the right of appellant to go to the deceased and seek an explanation of some differences claimed to have existed between them relative to a certain trapping lease, and that if at such time either the deceased or his partner, Albert Theriot, made an unlawful attack upon appellant, and it reasonably appeared to appellant that he was in danger of losing his life or of receiving serious bodily injury to himself, as viewed from his standpoint alone, then it was not necessary for him to retreat, but that he would be justified in killing the deceased. We think this was as far as the court was required to go in such portion of his charge. To have gone further would have been the singling out of different phases of the defense, and might have eventuated in a charge on the weight of the testimony. The court practically told the jury what was desired by appellant,—but same was in a general term,— when he directed them that this right of self-defense should be viewed from appellant's standpoint alone.

Appellant's ground number three relates to a complaint because of the court's failure to give in charge to the jury the provisions of Art. 1224, P. C., which relates to a lesser attack. It will be observed from the original opinion that appellant's testimony precludes him from offering such a defense. But the appellant's attorneys argue that evidently appellant's testimony was not believed by the jury. That seems to be true; however we further observe that aside from appellant's testimony there was no other testimony that remotely touched upon such a defense. Hence it would not have been proper for the trial court to have charged on a phase of the case not presented by the testimony.

Appellant also complains of a certain proceeding wherein the district attorney asked the witness Wallace Richard regarding the witness' activities in procuring funds for the purpose of assisting the appellant in making his defense in this

cause. Under the court's qualification of said bill we are constrained to the view that no error is evidenced thereby.

We see no reason to recede from the views expressed in our original opinion, and the motion will be overruled.