ORAN L. MOUNTS v. THE STATE.

No. 23017. Delivered February 7, 1945.
Rehearing Denied March 7, 1945.

178

The opinion states the case.

*Henry Tirey,* of Dallas, and *Davis, Jester, Tyson & Dawson,* of Corsicana, for appellant.

*C. C. Randle,* County Attorney, *Fred L. Wilson, Assistant* County Attorney, and *Forrester Hancock,* all of Waxahachie, and and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Murder is the offense; the punishment, ten years in the penitentiary.

The deceased, Jack Lummus, a policeman; appellant, a commissioned Texas Ranger, employed as a special officer of a railroad company; and Richardson, a nightwatchman, by chance and without previous arrangement, happened to meet in a small cafe operated by McDonald about ten o'clock the night of May 13, 1944. Each party carried on his person a pistol. Appellant took exception to a remark of Richardson which Richardson said he made as a jest and in fun. Richardson apologized. The deceased, speaking to appellant, then said: "What's the matter with you? You hurrah Johnny and we hurrah each other down at the City Hall." Whereupon, appellant pushed or shoved Richardson against deceased, causing him to stumble. McDonald, cafe owner, then said to appellant: "Mr. Mounts, if you are going to get rough, you will have to get outside." Whereupon, the three parties left the cafe—deceased first, followed successively by Richardson and appellant. Upon getting outside the cafe and onto the walk, deceased, while patting or tapping appellant on the shoulder or chest and in apparent good humor, said to appellant: "You railroad men can't take a joke like that." Appellant's reply thereto was not heard, but deceased replied: "Mr. Mounts, if I have said anything you don't like, or something you can't take, slap me in the face, and I can take it." He further said: "If I have done anything you don't like and you don't slap me, you are a dirty coward." Whereupon, "while Mr.

Lummus (deceased) was there and still had his hands up there, as he got through speaking, Mr. Mounts stepped back and pulled a gun and pulled the trigger and Mr. Lummus fell* * *." He died immediately.

The foregoing facts are shown by the testimony of the State and are supported, in the main, by the testimony of four witnesses.

The happenings in the cafe, before the parties left the building, are not materially disputed by the appellant. The disputed issue of fact arise as to what occurred after the parties reached the sidewalk. Appellant's version as to what then occurred, as shown by his testimony, is as follows:

"When we came out of the restaurant, Mr. Richardson and Jack (deceased) stopped and I came out south of them and I was south of them and they were north of me. When Rich walked between us, I kind of stepped around. My car was north of there, and I wanted to go up to my car, and that left them south of me, and after John walked between us, I stepped around that way and Jack walked up to me and tapped me on the chest and said, 'You are just a God-damned coward if you don't hit me," and I said, 'No, Jack, I don't want to hit you,' and I started to backing off, trying to get to my car, and Jack was following me up, but not as fast as I was stepping back, and he said, 'Mounts, I want you to know that I told you,' and he reached for his gun and I reached for mine.

"I told him, 'Jack, don't do that.' I don't know whether he got it all out or not, before I shot. Just as I got my gun out I pulled the trigger, I never did get my gun up. I shot quickly because I thought he was going to shoot me.

"I was afraid of him because I had heard what he had said about me, and I heard about him hurting other people. I did not turn around because I was afraid he would shoot me or hit me in the head with that gun.

"At the time this happened I was afraid of Jack Lummus. I was not mad at him. I just did not want to get hurt. I did not have any malice in my heart. I did not intend to kill him. My intention was, I just wanted to stop him. I didn't want him to shoot me. I had five other bullets in my pistol. I only shot one time, and I did that for my protection."

There was testimony showing both communicated and uncommunicated threats by the deceased against appellant, occur-

ring a short time prior to the killing, and expressions by deceased derogatory to appellant.

The appellant introduced testimony showing two specific acts of violence by deceased in which deceased assaulted and "pistol-whipped" one Chis Dowdell and one Charlie Moore on different occasions. Appellant testified that he knew of these assaults by deceased prior to the killing.

The case was submitted to the jury upon the issues of murder with, and without, malice and self defense from apparent danger and threats.

Appellant insists that, under the facts here presented, he was entitled also to have the jury instructed in accordance with the provisions of Article 1224, P. C., authorizing self-defense against an attack less than one producing a reasonable expectation of fear of death or serious bodily injury. A proper exception was reserved to the court's charge presenting the question.

A similar contention was made in Boykin v. State, 184 S. W. (2d) 289, wherein we said:

"It will be noted that Article 1224, P. C. has reference to 'unlawful and violent attack.' The right of self defense conferred by this Article is statutory and, to arise, must come within the statute.

"It has been the consistent holding of this Court that the attack there referred to has reference to an actual attack; that it does not have reference to, nor is applicable when the injured party is about to make, an attack or is doing some act preparatory to the attack."

In other words, the right of self-defense provided by Article 1224, P. C., does not arise upon facts showing apparent attack as distinguished from actual attack.

In the instant case, appellant, by his own testimony, shows that he acted in self-defense from only the apparent attack or apparent danger as manifested by the demonstration of the deceased as if to draw a pistol. There was no actual attack shown or relied upon. We are unwilling to say that the tapping or patting of the appellant on the shoulder or chest constituted an unlawful or violent attack, as contemplated by Article 1224, P. C. The facts did not warrant or require the submission of self-defense under Article 1224, P. C. As supporting the conclusion reached, see also:

Joubert v. State, 136 Tex. Cr. R. 219, 124 S. W. (2d) 368; Broussard v. State, 137 Tex. Cr. R. 273, 129 S. W. (2d) 295; Jones v. State, 125 Tex. Cr. R. 454, 69 S. W. (2d) 65; Bryant v. State, 51 Tex. Cr. R. 66, 100 S. W. (2d) 371.

Appellant excepted to the charge for failing to submit the law of aggrevated assault.

Aggravated assault arises in a murder case when the instrument with which the killing occurs is not a deadly weapon, per se, or one which, in the manner of its use, is not ordinarily calculated to produce death and when, in addition thereto, the evidence raises the lack of intent to kill. Barnett v. State, 144 Tex. Cr. R.. 249, 162 S. W. (2d) 411; Thompson v. State, 144 Tex. Cr. R. 321, 162 S. W. (2d) 728; Miller v. State, 112 Tex. Cr. R. 125, 13 S. W. (2d) 865; Bookman v. State, 112 Tex. Cr. R. 233, 16 S. W. (2d) 123; Johnson v. State, 125 Tex. Cr. R. 381, 68 S. W. (2d) 202; Barr v. State, 172 S. W. (2d) 322.

The facts do not bring the instant case within the rule stated, for here the instrument used was a deadly weapon, per se, a pistol fired intentionally at close range into the stomach of deceased. It would be a strange doctrine, indeed, to say that a shooting under such circumstances was done with no intent to kill. The issue of aggravated assault was not raised by the evidence.

We come now to a discussion of the most troublesome question presented by this record. The same relates to the alleged misconduct of special counsel for the State in propounding certain questions to appellant upon cross-examination.

In this connection, note is to be taken of the testimony showing the assaults by deceased upon Dowdell and Moore. With reference to this matter, appellant was asked, upon cross-examination, the following question:

"You speak about this pistol-whipping, that you heard about Chris Dowdell and Charlie Moore. You never did pistol-whip anybody, did you?"

To this question appellant replied, "No sir." Objection of appellant's counsel to the question and answer was sustained, and the jury instructed to disregard same.

After a pause, and following the above, counsel propounded the following question to appellant, viz.:

"On December 24, 1933, at Live Oak—Oak Cliff Boulevard at 9:15, I will ask you if you didn't have an altercation and pistol-whip a victim?"

The trial judge, before objection was made, said: "Here, here. Stop that. That's improper."

It is insisted that the two questions, taken together, with especial emphasis upon the last, were so prejudicial and obviously hurtful as to preclude to appellant a fair and impartial trial.

In determining the question thus presented, it is deemed pertinent to notice the following facts developed during the trial. Appellant filed an application for a suspended sentence and supported same by his testimony that he had never been convicted of a felony. Upon conclusion of his testimony, numerous witnesses attested appellant's good reputation as a peaceable and law-abiding citizen. One of such witnesses, W. D. Blackstone, was upon cross-examination, interrogated as to whether he had heard about appellant's "pistol-whipping" a man at Valley Junction in 1932 and if he had heard of appellant's "pistol-whipping" George Jacoby in Dallas on December 24, 1933. The witness answered that he had not heard of any such conduct by appellant. No objection was made to such cross-examination, appellant apparently recognizing that such was proper under the rule that a witness, in attesting the good character of an accused for being a peaceable and law-abiding citizen, may be asked, as touching the weight of his testimony, if he had heard of acts of misconduct on the part of the accused. However, appellant insists that such question following those propounded to appellant—as above mentioned—but accentuated the harm already done, in that it further impressed the jury that appellant had, in fact, "pistol-whipped" a victim.

It has long been the established rule governing prosecution for crime in this State that the accused is to be tried upon the merits of each case, alone, and that proof of extraneous crimes or specific acts of misconduct by the accused are generally not admissible, such becoming admissible only under certain exceptions and conditions. No such exceptions or conditions are here shown as would authorize the State to show that appellant had been guilty of "pistol-whipping" a victim—that is, an assault with a deadly weapon. So then the State was, in this case, precluded from making proof, directly, that appellant had "pistol-whipped" a victim. It is equally true that the

State could not indirectly make proof of such fact. So the question before us narrows itself to the proposition as to whether the questions propounded, especially the last one, were so framed as to constitute proof, by implication, that appellant had in fact been guilty of "pistol-whipping" a victim. The question, as propounded, was specific as to date, place, and act, and the inquiry of appellant was if such act "didn't happen." We are constrained to hold that the question was calculated to impress the jury that appellant had been guilty of the offense inquired about, and that no other construction could be given thereto. The question, as so framed, of and within itself, implied appellant's guilt of the misconduct inquired about and amounted, therefore, to proof of a fact, by necessary implication damaging and hurtful to appellant, that the State was not authorized to prove.

In support of the conclusion reached, we cite: Adaire v. State, 45 S. W. (2d) 984, 119 Tex. Cr. R. .381; Hunter v. State, 113 Tex. Cr. R. 90, 18 S. W. (2d) 1084; Childress v. State, 92 Tex. Cr. R. 215, 241 S. W. 1029; McNaulty v. State, 138 Tex. Cr. R. 317, 135 S. W. (2d) 987.

In view of the fact that appellant's defensive theories depended almost entirely upon his own testimony and the punishment assessed, we are not authorized to speculate as to probable injury to the appellant in the asking of the question. The trial judge recognized the impropriety as well as the harmful character of the question by his prompt interference; he did what he could but the harm to the appellant had been done.

Appellant offered to prove that some five or six months prior to the homicide and as a part of his duties as a special officer of the railway company, he sought to have the company issue an annual pass to the deceased. Upon objection as being remote and immaterial, the proffered testimony was rejected. Appellant insists that such testimony was admissible as tending to show the relationship existing between the parties at the time of the homicide and the lack of ill-will on the part of appellant toward the deceased.

Under the facts here presented, the testimony was remote, for it occurred prior to the time of the alleged threats by deceased against appellant. What may have been appellant's attitude toward deceased prior to the threats does not tend to show what they were thereafter. Moreover, appellant was acting in an official capacity with reference to whom annual passes might be issued by the company. What may have been his attitude in

an official capacity does not necessarily reflect his individual feelings. The materiality of the proffered testimony does not appear.

An exception was reserved to the charge on threats.

In view of the fact that the case is to be reversed, for the error heretofore discussed we deem it necessary only to call attention that when the issue of self-defense upon threats arise, the rights of the accused should not be made to depend upon whether the threats had actually been made. In such cases the rights of the accused depend only as to whether he believed the reported threats had been made. 22 Tex. Jur. pp. 462 and 1073.

Other exceptions not covered herein have been examined and are overruled without discussion.

For the error pointed out, the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The State has filed a motion for rehearing in which it is insisted that the question upon which the reversal is predicated should not be given that effect.

As supporting such position the State cites Craver v. State, 172 S. W. (2d) 316; Sanders v. State, 132 Tex. Cr. R. 466, 104 S. W. (2d) 864; Alexander v. State, 8 S. W. (2d) 176; Booth v. State, 90 Tex. Cr. R. 240, 234 S. W. 888; Ard v. State, 101 Tex. Cr. R. 545, 276 S. W. 263; Jenkins v. State, 175 S. W. (2d) 83. These cases when considered in connection with those cited in our original opinion only demonstrate that given cases on the question here presented are of little value save as they may announce general principles. They illustrate that each case must depend upon the facts and circumstances peculiar to it.

We agree with counsel for the State that only in rare instances would we feel called upon to reverse a case solely because an improper question may have been propounded, but

that the question itself must be of an obviously harmful character carrying with it injury to the accused on trial.

We can not more clearly than was done in our original opinion point out why it occurs to us that the question here involved falls within the class last mentioned.

The State's motion for rehearing is overruled.