Gregory Franklin
KENDRICK, Appellant,

v.

The STATE of Texas, State.

No. 2–85–212–CR.

Court of Appeals of Texas,
Fort Worth.

May 14, 1987.

John M. Anderson (on appeal only), Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and David K. Chapman, Asst. Dist. Atty., Fort Worth, for appellee.

Before FENDER, C.J., and BURDOCK and HILL, JJ.

## OPINION

HILL, Justice.

Gregory Franklin Kendrick appeals his conviction by a jury of the offense of sexual assault. TEX. PENAL CODE ANN. sec. 22.011 (Vernon Supp.1987). The judge assessed his punishment at twelve years in the Texas Department of Corrections. He presents four points of error.

We affirm.

In point of error number one, Kendrick contends, through his counsel on appeal, that he was denied reasonably effective assistance of counsel at trial.

■ A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, a defendant must show that counsel's performance was deficient; second, a defendant must show that the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

■ With regard to a defendant's contention that his counsel was not functioning as the "counsel" guaranteed him by the sixth amendment of the United States Constitution, judicial scrutiny of counsel's performance must be highly deferential. *See id.,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. There is a strong presumption that counsel's performance falls within the "wide range of professional assistance," and a defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *See Kimmelman v. Morrison,* 477 U.S. ——, ——, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305, 323 (1986). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *See id.,* 477 U.S. at ——, 106 S.Ct. at 2586–87, 91 L.Ed.2d at 327; *see also Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App. 1986).

■ Concerning the second prong of *Strickland,* this requires a showing that counsel's alleged errors were so serious as to deprive a defendant of a fair trial, a trial whose result is reliable. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. It is not enough for a defendant to show that the errors had some conceivable effect on the outcome of the proceeding, *id.,* 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697; he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See id.*

■ Basically, the question for our review is whether there is a reasonable probability that absent the alleged errors, the fact-finder would have had a reasonable doubt respecting guilt. *See id.,* 466 U.S. at 695, 104 S.Ct. at 2069, 80 L.Ed.2d at 698. In making this determination we must consider the totality of the evidence before the jury, and the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *See id.*

■ We first examine counsel's performance. In his argument under this point of error, Kendrick lists numerous alleged errors on the part of his trial counsel. We do not feel it necessary to repeat those here. We will refer to those actions or omissions on the part of trial counsel which we feel to be the most pertinent to the question before us.

Kendrick was charged with the sexual assault of J——M——, a Dallas resident, at the Dallas-Fort Worth Airport upon her return from Chicago. The State's case was based upon the eyewitness identification of him by the injured party. The defense was alibi.

Kendrick's counsel appears to have a good trial record in another state from which he had recently moved to Texas prior to trial. Although he is licensed to practice law in Texas, his performance was to some

extent impaired by his lack of a thorough knowledge of Texas law at the time of trial. Extensive testimony concerning counsel's representation was taken at the hearing on Kendrick's motion for new trial. We here take note of some problems which we have with the representation afforded Kendrick by counsel in the case.

1. Although he felt that the lineup was unfair, counsel told another attorney that he did not know he could file a motion to suppress after the trial had begun. When the attorney suggested that he write the motion out on a yellow legal pad, he said he was not sure how to do that. The attorney wrote out the motion for him.

2. Counsel apparently was unfamiliar with the appropriate procedure for the preservation of error. He occasionally received prompts and advice on the matter from the lawyer just mentioned, who offered occasional assistance during the trial, and from the investigator whom the court appointed to assist in Kendrick's defense. When the State improperly asked Kendrick's mother, at the guilt-innocence stage, if he were on probation, counsel objected, and the court sustained the objection, but counsel did not ask for an instruction to the jury to disregard the question, nor did he move for a mistrial. The following day, after an overnight recess, counsel moved for a mistrial.

3. In what he says was an effort to show openness and candidness on the part of the defendant, counsel admitted into evidence the criminal record of every member of Kendrick's family, showing that his mother and brother were both on probation and that his other brother had erroneously been arrested for murder. Furthermore, since he introduced this information without careful checking of its basis, he allowed Kendrick's mother to testify that her charge for tampering with government documents had been dismissed because the charge had to do with food stamps and she had never received any. The State was able to show that she had actually pled guilty to the charge, which was for the alteration of a registered nurse's license, and had been assessed a fine and probated sentence. Since Kendrick's mother presented the only real alibi evidence he had, the State in its closing argument was able to emphasize the above events to show her total lack of credibility.

Although the effect of these errors was negative with respect to the jury's perception of Kendrick and his family, including those who were witnesses in his alibi defense, having reviewed the entire record of the case, we are unable to say that there is a reasonable probability that, but for the errors, the result of the proceeding would have been different. We believe that in view of the positive identification of Kendrick by the victim, coupled with the fact that he was known to be in the airport area at or about the time of the offense, dressed in a way similar to that of the attacker, having been fired from his job at the airport, by a woman supervisor, shortly before the attack, and given the fact that his only significant alibi witness was his mother, we believe that the reasonable probability is that the result would have been the same in this case even in the absence of the errors complained of, including those we have not enumerated. We overrule point of error number one.

█ In point of error number two, Kendrick urges that the trial court erred in failing to grant his motion for mistrial which was made after the State inquired of his mother, at the guilt-innocence stage of the trial, if he were on probation. After the trial court sustained Kendrick's objection to the State's question, proceedings continued with further testimony of his mother. At the conclusion of her testimony, the proceedings were recessed until the following morning. The next morning, for the first time, Kendrick made his motion for mistrial. His motion for mistrial was untimely, presenting nothing for review. *See Anderson v. State,* 659 S.W.2d 932, 935 (Tex.App.—Fort Worth 1983, no pet.). We overrule point of error number two.

■ Kendrick maintains in point of error number three that the trial court erred in admitting State's Exhibits Numbers 13 through 18 into evidence for the purpose of impeaching the testimony of Kendrick's mother, because the admission of such evidence was in violation of former article 38.29 of the Texas Code of Criminal Procedure, *repealed by* Act of June 14, 1985, ch. 685, sec. 9(b), 1985 Tex.Gen.Laws 2472, 2474 and now replaced by rules 608 and 609 of the Texas Rules of Criminal Evidence. The new rules did not become effective until after the trial of this cause. Article 38.29 provided that the fact that a witness in a criminal case has been charged with an offense is not admissible unless a final conviction has resulted or a suspended sentence has been given and not set aide, or that the witness has been placed on probation and the period of probation has not expired. Kendrick further complains of the fact that the details of Mrs. Kendrick's offense were presented. The record reflects that it was Kendrick, not the State, who solicited evidence of Mrs. Kendrick's previous offenses and the details thereof. Given the fact that Mrs. Kendrick's testimony created a false impression of the disposition of the offense and of its details, the court did not err in permitting the State to correct the false impression left by Mrs. Kendrick. We overrule point of error number three.

■ Finally, Kendrick asserts that the trial court erred in failing to grant a motion for mistrial after the State asked his mother if another son, William Ashley Kendrick, had been involved in juvenile trouble. The question was asked after testimony had already been elicited by Kendrick's counsel to the effect that William Ashley Kendrick, who was not a witness in the case, was on probation. The trial court sustained an objection to the question and instructed the jury to disregard it. Generally, an instruction to disregard will cure error, except in extreme cases where it appears the question or evidence is clearly calculated to inflame the minds of jurors and is of such character as to suggest the impossibility of withdrawing the impression produced in the jurors' minds. *See Coe v.*

*State,* 683 S.W.2d 431, 436 (Tex.Crim.App. 1984); *Carter v. State,* 614 S.W.2d 821, 824–25 (Tex.Crim.App.1981). We find that in the case at bar the error in asking the question was cured by the trial court's instruction to disregard. We overrule point of error number four.

The judgment is affirmed.

BURDOCK, Justice, dissenting.

I respectfully dissent. I would sustain appellant's second point of error.

Appellant's second point of error alleges reversible error was committed when the State attempted to introduce evidence of an extraneous offense. Appellant did not testify. In the process of establishing an alibi, appellant's counsel questioned appellant's brother, Chris Kendrick, as follows:

BY [DEFENSE COUNSEL]:

Q. Chris, are you related to the defendant, Gregory Franklin Kendrick?

A. Yes, sir.

Q. And what relationship are you to him?

A. He's my brother.

Q. And are your currently—are you—have you ever been convicted of a crime?

A. No, sir.

Q. How old are you?

A. 17.

Q. Chris, do you know William Ashley Kendrick?

A. Yes, sir.

Q. And what relation is he to you?

A. He's also my brother.

Q. *Is he older than Greg?*

A. *Yes, sir.*

Q. *Is he currently on probation out of Dallas County?*

A. *I have no idea. I do believe, yeah.*

Q. Do you know what he's on probation for?

A. Naw. [Emphasis supplied].

Although the relevancy of this testimony is unknown, William Ashley Kendrick is another of appellant's brothers. The State

did not pursue the point of William's probation on cross-examination.

Following Chris' testimony, appellant called his mother as a witness, to solicit more alibi evidence. At the conclusion of the mother's testimony, and without warning, the record reflects the State asked, "[i]s your son, Gregory Franklin Kendrick, on probation?"

Appellant's counsel immediately objected to the question, and the jury was retired from the courtroom. Outside the presence of the jury, the trial court sustained appellant's objection. After a brief recess, the trial resumed, with the State continuing its recross-examination of appellant's mother.

When she finished testifying, the trial court again retired the jury. At this point, the attorneys and the trial judge discussed appellant's efforts to subpoena his next and final witness. Upon completion of this discussion, the trial court brought the jury back in and recessed the trial until the following morning.

Before the trial recommenced the next day, appellant informed the court outside the jury's presence that he wanted to make or renew a motion for mistrial, based on the prosecutor's question of the previous day regarding appellant's probation. The trial judge denied the motion. Appellant did not ask the court to instruct the jury to disregard the question, and the court did not do so.

I feel appellant's motion for a mistrial should have been granted.

On appeal, appellant claims the question constituted the improper use of an extraneous offense. The majority finds appellant has presented nothing for review because he made an untimely motion for mistrial. *See Anderson v. State,* 659 S.W.2d 932 (Tex.App.—Fort Worth 1983, no pet.).

The fact that the objectionable testimony in *Anderson* occurred during the punishment phase of the proceedings deserves emphasis, as it distinguishes *Anderson* from the present case. In *Anderson,* appellant had applied for probation. *Id.* at 934. This court, in *Anderson,* found evidence of any extraneous offenses committed by appellant after commission of the crime for which he was charged was quite relevant to whether probation should be granted. *Id.* at 935. Extraneous transactions constituting offenses shown to have been committed by the accused may become admissible upon a showing by the prosecution that the transaction is both *relevant* to a *material* issue in the case, and the probative value of the evidence outweighs its inflammatory or prejudicial potential. *See Rubio v. State,* 607 S.W.2d 498, 506 (Tex.Crim.App.1980).

In this case, the prosecutor addressed an objectionable question to a witness during the guilt-innocence stage of the trial, before the jury had determined what, if any, punishment should be assessed against appellant. It is a fundamental principle of law that an accused is entitled to be tried on the accusations made in the State's pleading, and not for some collateral crime, or for being a criminal generally. *Smith v. State,* 646 S.W.2d 452, 455 (Tex.Crim.App. 1983). Therefore, the State is generally prohibited from proving prior specific acts of misconduct, similar happenings, or extraneous offenses committed by the accused. *Elkins v. State,* 647 S.W.2d 663, 665 (Tex.Crim.App.1983).

The reason for this rule is that although the evidence has some legal relevance to the general issue of whether the accused committed the act charged, it is inadmissible because it is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him. *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex. Crim.App.1972). *See also Williams v. State,* 662 S.W.2d 344, 346 (Tex.Crim.App. 1983). In certain circumstances a question may be so obviously harmful to the defendant that error is preserved even if the defendant failed to pursue his objection to the point of procuring an adverse ruling from the court below. *Mounts v. State,* 148 Tex.Crim.R. 177, 185 S.W.2d 731, 734–35 (1945).

In *Mounts,* the prosecution asked appellant, who was on trial for murder, if he had

ever pistol-whipped anyone. *Id.* at 734. Appellant's objection to the question was sustained and the jury was instructed to disregard the question. The State then immediately inquired again about the same extraneous offense. At that point, the trial court admonished the prosecutor to stop the improper questioning. Appellant made no objection to the second question. *Id.*

Applying the rationale of *Mounts*, I believe the nature of the question propounded by the State in this case was of such an obviously harmful character that appellant's point regarding the State's impermissible presentation of evidence of an extraneous offense has been preserved for our consideration. The State maintains any error arising from its question would have been cured if appellant had asked the court for an instruction to disregard, and the court had granted one. In light of the *Mounts* holding, I find this argument immaterial to our disposition of this case.

I would further hold the question addressed by the State, interposed as it was before the jury had yet to determine appellant's guilt, was so prejudicial and inflammatory that any probative value inherent in the potential response was outweighed. At trial, the State argued appellant had "opened the door" by asking one of appellant's brothers if appellant's other brother was on probation. On appeal, the State

has abandoned this position. It now suggests that, in the context of strong evidence of guilt, the unanswered question addressed to appellant's mother was harmless.

I disagree. Regardless of the weight of the evidence, it would be difficult to imagine a question more prejudicial or inflammatory in nature. Based on my reading of the record, I would conclude the question asked by the State, whether in good faith or not, was of such a character that appellant's presumption of innocence was compromised. "The question, as so framed, of and within itself, implied appellant's guilt of the misconduct inquired about and amounted, therefore, to proof of a fact, by necessary implication damaging and hurtful to appellant, that the State was not authorized to prove." *Mounts*, 185 S.W.2d at 734. *See also Brown v. State*, 168 Tex. Crim.R. 67, 323 S.W.2d 954, 956–57 (1959).

Appellant's second point of error should be sustained and the case remanded for a new trial.