Joseph REED, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–92–312 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 3, 1994.

Decided Oct. 19, 1994.

Charles Freeman, Houston, for appellant.

Tom Maness, Dist. Atty., John R. DeWitt, Asst. Dist. Atty., Beaumont, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

Appellant, Joseph Reed, was convicted of the offense of sexual assault and was also found to be a repeat felony offender having previously been convicted of the offense of voluntary manslaughter. Appellant pleaded true to the enhancement paragraph. On December 2, 1992, after having found the defendant guilty of the offense of sexual assault, the jury assessed his punishment at 40 years imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Sentencing was pronounced and judgment was entered December 3, 1992. Appellant timely filed notice of appeal through his retained attorney on appeal, Hon. Charles Freeman.

Neither of the parties on appeal has favored us with a summary of the facts in this cause; therefore, the Court has examined the record to discover same.

On September 4, 1991, the complainant, Pamela Stewart, was patronizing a night club establishment in Port Arthur, Jefferson County, Texas, with her friend Becky Pinell. She had been drinking and dancing until about 2:00 o'clock a.m. Her girlfriend took her home to her apartment in Port Arthur.

She identified the defendant, Joseph Reed, to be standing next to the door to her apartment. He inquired where she had been but complainant ignored him and entered her apartment locking the door behind her. She partially disrobed; then fell asleep for a few moments. The door bell rang, and, thinking it was her girlfriend, she opened the door.

She stated, "[t]here was this black guy standing there." He forced his way into the apartment, forced her to the floor, and began disrobing her. Even though she was afraid of him, she pretended to cooperate.

She then told him that someone else was in the apartment so he got up and went to the door. When she stood up he grabbed her and pulled her out of the apartment to a grassy area behind the building. He threw her on the ground and then got on the ground beside her and forced his hand into her vaginal area causing great pain to the complainant. She managed to escape and ran to her apartment. She left her apartment ten minutes later, got in her car and drove to Becky Pinell's house. They went to a cafe and complainant found out that Becky had the appellant's phone number. She confirmed that it was the defendant's phone number. She later saw the defendant in the apartment area and identified him.

Complainant testified that she was so embarrassed she did not report the incident to the authorities until four days later. The State then passed the witness.

Defense attorney, Fred Carver, then cross-examined the complainant extensively and thoroughly. In fact, his cross-examination was as long as the direct examination. He established her drinking and dancing habits and her state of intoxication on the night in question. He challenged her identification of the appellant based on her intoxication and that other black men lived in that area. Carver gained her admission that she had probably thought and considered the statement, "[t]hat all blacks look alike." He even elicited an admission that she had repeated that saying. To show the unlikelihood of appellant being the person who committed the assault, she also admitted in response to trial attorney's questions that a person would have to be awful stupid to give his telephone number to the girlfriend of the person he had allegedly assaulted.

⌐ On re-cross, defense attorney Carver established that the complainant could not specifically describe the appellant except to say that he was black with short hair.

Becky Pinell then testified for the State verifying what the complaining witness testified to up until the time of leaving Pamela Stewart at her apartment. She had walked the complainant to her apartment door and then returned to her automobile. The appellant reached her car at the same time and in fact got into her car with her. She pretended to cooperate by telling the appellant to give her his phone number so that she could call him. She got him out of the car on the pretext that she had a jealous boyfriend who would show up at any time. After this, she drove home. Not long thereafter, the complainant came to her apartment in a hysterical condition. She later related these events to a mutual friend, Sharon Tipton, who dialed the number on the piece of paper which the appellant had given to Becky Pinell and had a conversation with the appellant. Appellant gave Ms. Tipton his exact address. The next day the complainant and Becky Pinell went to the police and gave written statements to Officer Bob Whitesel. Defense attorney, Carver, then cross-examined Becky Pinell asking in fact more questions and receiving more answers than on direct-examination by the State. He was able to discredit her testimony by emphasizing her intoxication on the night in question and the fact that she had picked two possible suspects out of a six photograph line-up. He also demonstrated that she had discussed her testimony with the district attorney before testifying. He further was able to discredit her testimony by having her admit that she could not be absolutely sure that the appellant was the person who committed the sexual offense against the complainant.

Sharon Tipton then testified she called the telephone number Becky Pinell had and she talked to the appellant. She pretended to be Becky and asked him if he remembered her and how he got in her car and gave her his phone number to which he answered in the affirmative. She pretended that she was going to meet him but he said he did not have an automobile, so he wanted her to pick him up. He told her to meet him at a McDonald's restaurant because he lived in a white house across the street. He said he would be on the front porch of the house. She terminated the conversation without setting a time to meet him. She later drove by that particular location and corroborated what the appellant had told her. She later contacted Officer Bob Whitesel who patronized her place of employment and set up a meeting between Whitesel and the complainant.

Detective Robert L. Whitesel, Sr. then testified about having receiving the sexual assault report from Pamela Stewart, the complainant. He identified in court the appellant as the person the complainant identified as the assailant to be "the black gentleman sitting there with the different color shirt next to the defense attorney." He used the same phone number that Sharon Tipton had and verified the address to be where the appellant Joseph Reed lived. That particular address was across the street from McDonald's. He then performed the routine police procedures in gathering the statements, making the identifications, and filing the case.

Cross-examination by the trial attorney established that many routine investigative procedures were not carried out in this particular case because it was reported five days after the incident. Defense attorney was deliberate and persevering in his attack on the testimony by the officer in attempting to cast doubt on the officer's reliability. He further established that the appellant was never given the opportunity to exonerate himself during the investigation. In fact his cross-examination was twice as long as the direct examination by the State. The State then rested its case.

The defense then called Christina Queen who lived in apartment 248 in the same complex where the complainant lived. Complainant lived in apartment 146 which would have been downstairs and fairly close to Ms. Queen's apartment. Ms. Queen testified that she had known the appellant for approximately nine years. She had given a party on the night in question and Joe had arrived early that day. The party broke up between 12:30 and 1:00 a.m. Then she and the appellant had sexual relations. She had a window open in her apartment which would have allowed her to hear any disturbance that

might have occurred near or in front of apartment 146.

At about 2:15 a.m. on the day in question she heard some people in the parking lot making noise, so then the appellant went out by himself and then returned approximately twenty minutes later. She testified that neither she nor the appellant were intoxicated. She never heard anything whatsoever. She further testified that she did not feel that appellant would have been disposed toward any further sexual activity that night. On cross-examination the witness said that the disturbance occurred about 2:15 a.m. and appellant went outside to check on the noise. He was clothed and she was too. When he returned she did not ask him about what had transpired nor did he say anything. She further admitted that she did not know what he did during the twenty minutes he was outside her apartment.

Defense then called Kathy Marie Thomas who resided in apartment 146 which is directly behind 148 where the complainant resided. She testified that she did not hear any kind of commotion in apartment 146 on the night in question. She testified that she left the party at about 12:45 a.m. and then went straight to her apartment and stayed up for a while watching television. She went to bed about 2:30 a.m. close to 3:00 o'clock. Her windows were not open and her air condition unit was operating.

The defense attorney then called Joseph Reed, the appellant. Mr. Carver questioned him regarding his education history and employment history. Appellant stated he was staying with his mother on the day in question at 1645 Savannah in Port Arthur, Texas. He testified that he did not drink anything at the party. Between 2:00 or 3:00 a.m. he went outside Kathy Thomas' apartment to investigate a noise. In response to the question, "What did you find?", he stated "Well, I seen two white chicks, you know. They was about drunk." He was then asked, "You saw two white girls?", to which he responded in the affirmative. He stated they were drunk and they needed help. He helped one to the car and asked if she needed him to drive her home. She was very appreciative and even asked him for his phone number. He main-

tained that she (Becky Pinell) asked how she could get in touch with the appellant. He denied making any advances toward her and further testified that he would not go out with a white woman. Defense then elicited from the appellant criminal charges that had been lodged against him and their disposition. He further brought out the fact that appellant was on parole until 1994 and if he committed any kind of offense his parole would be revoked.

On cross-examination, the State established the fact that he had not gotten probation on one occasion to which he testified he had obtained probation and that he was finally convicted of voluntary manslaughter on January 23, 1989. This latter conviction was used for enhancement purposes. Other than challenging alleged discrepancies in the appellant's testimony and other witnesses' testimony that conflicted with his, cross-examination of the appellant by the State was not remarkable but took standard approaches to discredit the witness. This completed all the evidence submitted to the jury during the guilt/innocence phase of the trial.

Appellant brings three points of error. The first point of error alleges that appellant's trial lawyer failed to render effective assistance of counsel during the guilt/innocence phase of the trial. Within this point of error, appellant points out seven instances of alleged ineffectiveness on the part of trial counsel.

The standard for reviewing counsel's effectiveness at trial during the guilt/innocence phase consists of two prongs: 1) counsel's performance must have been deficient, and 2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In proving prejudice, the appellant must show that a reasonable probability exists that, except for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is that probability which is sufficient to undermine confidence in the outcome which was in fact reached. *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 678. Under the *Strickland* test, appellant, defendant below, bears the burden of proving

ineffective assistance of counsel. *Jackson v. State,* 877 S.W.2d 768 (Tex.Crim.App.1994).

■ Without both findings, this Court cannot conclude that the conviction resulted from a breakdown in the adversarial process that rendered the result unreliable. *Boyd v. State,* 811 S.W.2d 105 (Tex.Crim.App.1991). The standards set by *Strickland* have been adopted in Texas by *Hernandez v. State,* 726 S.W.2d 53 (Tex.Crim.App.1986). Contentions of ineffectiveness of counsel must be proved by the appellant by a preponderance of the evidence. *Ex parte Kunkle,* 852 S.W.2d 499 (Tex.Crim.App.1993).

■ If we assume that trial counsel for appellant committed errors, such errors are not to be examined as isolated incidents but in the context of the overall record. *Bridge v. State,* 726 S.W.2d 558 (Tex.Crim.App. 1986). We are required to indulge a strong presumption that counsel's conduct in the trial court falls within the wide range of reasonable, professional assistance and appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2084, 80 L.Ed.2d at 694; *Jackson,* 877 S.W.2d at 771.

■ Effective assistance of counsel does not anticipate errorless counsel nor is counsel to be judged by hindsight. *Ex parte Cruz,* 739 S.W.2d 53 (Tex.Crim.App.1987). Trial counsel will be allowed to make decisions regarding lines of defense and regarding strategy. *Ex parte Allridge,* 820 S.W.2d 152 (Tex.Crim.App.1991).

Appellant alleges in his first point of error that trial counsel failed to render effective assistance of counsel on the issue of appellant's guilt. He then discusses seven particular incidents during the guilt/innocence phase of the trial charging trial counsel with ineffectiveness.

■ Appellant first alleges that when trial counsel examined the complainant on the basis that complainant's identification of the appellant was tainted because she admitted, "[a]ll blacks look alike", trial counsel inappropriately injected race into the trial and "im-

properly focused the jury's attention on appellant's blackness on the issue of his guilt." We find that trial counsel, instead of demonstrating a racial prejudice or injecting same into the trial, was attempting through strategy to discredit the complainant's identification of the appellant. *Jackson v. State,* 846 S.W.2d 411 (Tex.App.—Houston [14th Dist.] 1992, no pet.). We therefore overrule this contention by appellant.

■ Appellant next objects to trial counsel failing to object to the State asking the complainant why she was afraid to give her residential address in open court. The complainant answered, "because I am afraid he'll come back. I know he will." This line of questioning was opened by appellant's trial counsel asking the complainant where she lived. While we cannot say this was a legitimate inquiry by the State, neither can we say that this was prejudicial error committed by trial counsel. It would be reasonable to assume that the victim of a sexual assault would be afraid of the person committing the assault and would be adamant in refusing to divulge her place of residence to the defendant on trial. We overrule this point by appellant.

■ The next alleged incident of ineffectiveness of trial counsel is asserted by appellant when the complaining witness on crossexamination testified to events surrounding the appellant getting into the car with her girlfriend and giving her his phone number. This evidence, while being hearsay, was cumulative. This testimony also substantiated the defense tactic of asserting that no one would be so stupid as to give his phone number to a witness directly involved in the assault in question. Therefore, logically it was highly unlikely that appellant committed the assault. *See Smith v. State,* 763 S.W.2d 836 (Tex.App.—Dallas 1988, pet. ref'd).

■ Appellant also alleges ineffectiveness on the part of trial counsel in eliciting the above testimony by stating that, "Appellant alleges that Carver's affirmative elicitation of such hearsay testimony; during cross-examination of Stewart during the State's case-inchief, coincidentally established that he (appellant) committed a remarkably similar, yet

otherwise inadmissible, extraneous offense against Pinell." Pinell, complainant's girlfriend, testified on direct examination that appellant put his hands on her, tried to kiss her, moved his hands across her breasts and then placed his hands down between her legs. Again, appellant's trial counsel gave a lengthy and artful cross-examination of the State's witness Pinell placing the identity of the appellant at issue. Appellant complains that through this testimony an extraneous offense was presented to the jury. The evidence tendered by Pinell was admissible to show identity. *Bevers v. State*, 811 S.W.2d 657 (Tex.App.—Fort Worth 1991, pet. ref'd).

■ Also under point of error one, appellant alleges that trial counsel for the appellant in fact attacked appellant's credibility by disclosing prior convictions to the jury. It is readily apparent to this Court that trial counsel had determined the necessity for placing the appellant on the witness stand to testify on his own behalf. It is also apparent that trial counsel was demonstrating honesty and truthfulness on the part of the appellant to the jury. This was also obvious trial strategy to prevent the prosecution from publishing the offenses. *Kendrick v. State*, 729 S.W.2d 392 (Tex.App.—Fort Worth 1987, pet. ref'd). We overrule this point.

■ Appellant next complains that trial counsel's jury argument that the convictions could only be considered by the jury to gauge his credibility was an erroneous statement in conflict with the trial court's charge "limiting the jury's consideration of his conviction to passing upon the credibility of the defendant as a witness in his own behalf." Appellant is complaining that trial counsel argued on the basis of convictions but the jury was to consider only his conviction (singular in number). The record shows that appellant established that he had in fact been convicted more than one time; therefore, trial counsel's argument was actually based on the record. Accordingly, we overrule this point.

■ Appellant next alleges before this Court that trial counsel forced him to testify in spite of his election not to do so. This assertion was made only in an affidavit in support of appellant's "objections and formal bill of exceptions." A bill of exceptions presented subsequent to trial even if made during trial does not preserve error for review by this Court. *Currie v. State*, 692 S.W.2d 95 (Tex.Crim.App.1985). Neither can a bill of exceptions subsequent to trial establish the need or claim for newly discovered evidence and ineffective assistance of counsel. *McCall v. State*, 512 S.W.2d 334 (Tex.Crim. App.1974).

■ Even if the trial court conducts a hearing on the bill of exceptions subsequent to trial, the record of such hearing will not be considered by this Court. *McCall*, 512 S.W.2d at 335. Appellant complains that this is a formal bill of exceptions per Tex.R.App.P. 52(c). This rule provides for the presentation of a formal bill to address alleged error by the trial court in excluding evidence. Even though no particular form of wording is required, the objection to the ruling or action of the trial court shall be stated with supporting evidence unless the statement of facts contains the evidence necessary. The formal bill is to be presented to the judge, who should submit it to the adverse party or counsel and if found to be correct, the judge shall sign it without delay. If the judge finds such bill incorrect, he will make suggested corrections and then sign the bill and file it with the clerk.

If the submitting party does not agree to corrections, the judge shall return the bill to him marked refused. The submitting party is then required to obtain the signatures of at least three respectable bystanders attesting to the correctness of the bill and then have it filed as part of the record. Affidavits not exceeding five in number may be submitted and on appeal the truth of such formal bill of exceptions shall be determined from such affidavits.

Appellant's allegations that he was required to testify against his will and that his attorney was allegedly intoxicated does not concern matters which were brought to the attention of the trial court nor could the trial court have ruled on such issues. *Cree v. State*, 814 S.W.2d 74 (Tex.App.—Corpus Christi 1991, pet. granted). After a review of the record, we find there is no evidence to

support appellant's claims. Accordingly, we overrule these contentions by appellant.

■ We find that the totality of representation of appellant's trial counsel did not fall below the standard of reasonably effective assistance. *Butler v. State*, 872 S.W.2d 227 (Tex.Crim.App.1994). As we have pointed out, appellant is not entitled to a trial totally error free by flawless representation. *McFarland v. State*, 845 S.W.2d 824 (Tex. Crim.App.1992). Appellant is entitled to reasonably effective counsel and as to this contention we find that appellant has not carried his burden to show otherwise. *Jackson*, 877 S.W.2d at 771.

■ Appellant alleges in his point of error two that trial counsel failed to render effective assistance of counsel on the issue of appellant's punishment. The standard for examining effectiveness of trial counsel during the punishment phase is governed by the principles set out in *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Crim.App.1980). The test of rendering effective assistance of counsel is whether counsel was reasonably likely to render and in fact rendered reasonably effective assistance of counsel.

Appellant incorporates by reference argument and authorities under certain portions of point of error number one but fails to show how the referred allegations occurred during the punishment phase of the trial. Therefore he presents nothing for review.

Appellant further argues that improper jury argument was made by appellant's trial counsel but he fails to cite any authorities for his position. Therefore we cannot consider this particular contention. *Melton v. State*, 713 S.W.2d 107 (Tex.Crim.App.1986).

■ Appellant also complains in this same point of error that no objection was lodged by trial counsel to the introduction of appellant's penitentiary packet which contained appellant's indictment in a prior case for murder even though appellant was convicted of manslaughter. Appellant cites *Cooper v. State*, 769 S.W.2d 301 (Tex.App.— Houston [1st Dist.] 1989, pet. ref'd) to support his contention that certain allegations in the indictment should have been excised.

We cannot agree because *Cooper* is clearly distinguishable in that defense counsel allowed a void conviction to be heard by the jury which in turn allowed the prosecution to cross-examine the defendant about 14 convictions from other jurisdictions which would not have otherwise been revealed. Appellant cites no other authority to support his position. *Holmes v. State*, 681 S.W.2d 812 (Tex. App.—Houston [14th Dist.] 1984, no pet.).

We therefore overrule all points of appellant's point of error number two.

■ Appellant next asserts in his point of error number three that reversible error resulted when two jurors discussed the identity of appellant after the jury had separated and before the verdict was received. A review of the record in this case reveals no evidence that would substantiate the claim made by appellant in this point of error. The only evidence and record referred to by appellant concerns an affidavit attached to a formal bill of exceptions which we have previously discussed. Appellant's formal bill of exceptions does not constitute a part of the record on appeal, therefore, appellant presents nothing for review. We find that defense counsel rendered reasonably effective assistance during the punishment phase of the trial below. We overrule point of error number three.

We affirm the judgment of the trial court.

AFFIRMED.